**HARRY WINSTON, INC., Plaintiff,**

v.

**Kathleen A. KERR, Defendant.**

**No. 99 Civ. 0290(LAK).**

United States District Court, S.D. New York.

Sept. 10, 1999.

Lee A. Armstrong, Jones, Day, Reavis & Pogue, New York City, for Plaintiff.

Ronald C. Minkoff, Beldock Levine & Hoffman LLP, New York City, for Defendant.

David Boies, Boies & Schiller LLP, Armonk, NY, Steven I. Froot, Barrett Gravante Carpinello & Stern LLP, New York City, for Third Party Defendant Bruce Winston.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The extraordinary question now presented in this case is the extent, if any, to which legal protections against the disclosure of attorney work product and material prepared in anticipation of litigation shield documents and other evidence furnished by defendant, a former employee of plaintiff, to an adversary of plaintiff in alleged violation of her duties to her former employer pursuant to a contract under which the defendant stands to receive more than $1 million from plaintiff's adversary for her information.

### Facts

The late Harry Winston founded the famous Fifth Avenue jewelry firm which bears his name, plaintiff Harry Winston, Inc. ("HWI"), many years ago. He had two sons, Ronald and Bruce, and evidently arranged his affairs so that control of HWI has been in Ronald's hands since Mr. Winston's death, a situation with which Bruce is most unhappy.

As sometimes occurs in such circumstances, Ronald and Bruce have been engaged in internecine litigation for some time. There are at least two pending actions which were commenced prior to this, one an application in Westchester County for judicial settlement of the final account of Ronald Winston and others as trustees of a testamentary trust under the will of Harry Winston and the other a probate matter in Florida regarding the estate of Harry Winston's late wife, Edna Winston (the "Related Litigation").

The defendant, Kathleen A. Kerr, was employed by HWI from 1980 through 1987 and again from January 1990 until April 2, 1993. From 1991 through the end of her employment, she was a corporate officer with the title Vice President, New Business Development.

In August 1996, Bruce Winston entered into an agreement with Kerr and her associated entity, Mackerr Associates, which contemplated Kerr providing assistance to Bruce in his battles with Ronald and HWI. The agreement recited that Kerr "possesses certain knowledge, information and expertise that Kerr and [Bruce] Winston believe may assist [Bruce] . . . ." Kerr undertook to provide Bruce with assistance by responding to questions by his attorneys. In exchange, Bruce agreed to pay Kerr a minimum of $25,000 for up to fifty hours of her time. In addition, he agreed to pay her a bonus of at least $100,000 and up to $1 million based on the usefulness of the information provided by her following the occurrence of any "Culmination Event" among which was a final judg-

ment or settlement in either of the Related Litigations. In the event Bruce and Kerr are unable to agree on the amount of the bonus, the matter is to be submitted to binding arbitration.

Following the execution of the agreement, Kerr cooperated extensively with Bruce's attorney. She has provided documents to them, commented on materials they have obtained in discovery, and submitted to interviews the transcripts of which aggregate nearly 600 pages. A material part of the information she has provided, including information she and Bruce characterized as commentary on documents obtained elsewhere by Bruce, clearly consisted of knowledge acquired by her during and by reason of her employment by HWI.

In December 1998, HWI commenced this action against Kerr. The complaint alleges that Kerr, in breach of her obligations to it, misappropriated HWI documents and information, including trade secrets and confidential information, and that she has been enriched unjustly at HWI's expense by profiting from her use of that information. In substance, the claim is that the money she has received and may receive from Bruce at least in part is payment for conveying confidential information belonging to HWI to Bruce. It seeks damages equal to the full amounts paid to Kerr pursuant to her agreement with Bruce, punitive damages and other relief. Kerr in turn has impleaded Bruce.

HWI has sought extensive discovery concerning the information that Kerr has provided to Bruce and the dealings between them regarding her provision of information. Kerr and Bruce have asserted that certain of the materials are exempt from disclosure as attorney work product and material prepared in anticipation of litigation. The items now in dispute are (1) a number of memoranda drafted by Kerr for Bruce's attorneys (Privilege Log Items 47, 60, 62, 65 & 68), (2) memoranda between attorneys for Kerr and Bruce (*id.* 48–50), and (3) the transcripts of the Kerr interviews (*id.* 100–03).

The Court has received extensive letter briefs from the parties, heard oral argument, and reviewed the materials in question *in camera*.

### Discussion

■ HWI argues that the materials in question are not protected from disclosure because they were not prepared in anticipation of this case and, in any case, were generated in furtherance of an illegal scheme to purchase Kerr's testimony. Even if the claimed protections apply, it maintains, its need for them is sufficiently substantial nevertheless to require their production.

Rule 26(b)(3) provides in relevant part that materials prepared in anticipation of litigation are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Here, the precise identification of the information that Kerr has provided to Bruce is at the heart of plaintiff's case. Although HWI has deposed Kerr, her efforts to recall what she told Bruce's attorneys in nearly 600 pages of interviews and a number of detailed memoranda understandably fell considerably short of complete. As a practical matter, no other source of this information—specifically information concerning what Kerr conveyed to Bruce—exists. Hence, assuming that the Kerr transcripts and memoranda are work product and materials prepared in litigation, the Court finds that plaintiff has a substantial need for them and that their substantial equivalent is unavailable to the plaintiff.[1]

■ The Court has reviewed the memoranda between the attorneys for Kerr and Bruce. These are not work product or materials prepared in anticipation, as they simply evidence a debate about the construction of the Kerr–Bruce agreement. Even if they were, they have a direct bearing on plaintiff's allegations, as they go to the economic arrangements between Kerr and Bruce that are very much at the center of this case.

In view of the foregoing findings and conclusions, there is no need to consider the

1. The Court is aware that a greater level of protection is afforded to work product which consists of or would disclose attorneys' mental impressions, conclusions, opinions or legal theo-

other arguments for disclosure advanced by plaintiff. Suffice it to say that the Court finds the arrangement between Kerr and Bruce troublesome indeed irrespective of whether it constituted a crime.

### Conclusion

For the foregoing reasons, the objections to production of the Items 47–50, 60, 62, 65, 68 and 100–03 on defendant's privilege log all are overruled. Those documents shall be produced forthwith.

SO ORDERED.

ries. Kerr and Bruce, however, have not asserted that the materials at issue here fall into this category, either in whole or in part. Rather, they have assumed that the substantial need-unavailability test controls here. *See* letter, Steven I. Froot to Court, Aug. 20, 1999, at 2–3 (arguing that Kerr's deposition was substantial equivalent of requested material).